# No. 21-10708

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EDWARD EUGENE ROBINSON,

Defendant-Appellant.

On Appeal from the United States District Court
Northern District of Texas, Dallas Division
No. 4:19-CR-00352-P-2

**INITIAL BRIEF OF APPELLANT EDWARD EUGENE ROBINSON**

DELONIA A. WATSON
Attorney at Law
SBIN: 20937500
P.O. Box 24215
Fort Worth, Texas 76124-1215
Telephone: (817) 809-6640
Facsimile: (817) 446-5646
Email: dawatsonlaw@yahoo.com

Attorney for Edward Eugene Robinson,
Appellant

# CERTIFICATE OF INTERESTED PERSONS

The number and style of the case in the court below is as follows:

*United States of America v. Hardrick, et al,* Cause Number 4:19-CR-00352-P, in the United States District Court for the Northern District of Texas, Fort Worth Division.

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusal.

**Federal District Judge**:       Hon. Mark Pittman

**Magistrate Judges**:       Hon. Jeffrey L. Cureton
Northern District of Texas

Hon. Hal R. Ray, Jr.
Northern District of Texas

**Appellant**:       Edward Eugene Robinson

**Appellant's Counsel**:       Delonia A. Watson (appellate counsel)

J. Warren St. John (trial counsel)

David Miles Brissette (trial counsel)

Douglas C. Greene, Sr. (trial counsel)

Loui Itoh
Assistant Federal Public Defender
(trial counsel)

George Howard Lancaster
Assistant Federal Public Defender
(trial counsel)

**U. S. Attorney**:                 Erin Nealy Cox
Northern District of Texas

**Acting U.S. Attorney**:         Prerak Shah
Northern District of Texas

**Assistant U. S. Attorneys**:     Leigha Simonton (appellate counsel)
Northern District of Texas

Matthew Robert Weybrecht
(trial counsel)
Northern District of Texas

Nancy E. Larson (trial counsel)
Northern District of Texas

/s/ *Delonia A. Watson*
DELONIA A. WATSON
Attorney for Edward Eugene Robinson

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is requested solely with respect to Issue 1 — the denial of Mr. Robinson's motion to dismiss the indictment based on a Speedy Trial Act violation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW. . . . . . . . . . . . 1

STATEMENT OF THE CASE

      Course of Proceedings and Disposition Below . . . . . . . . . . . . . . . . . . . 2

      Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      Sentencing Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT

    I. The district court erred in denying Mr. Robinson's motion
       to dismiss the indictment based on a Speedy Trial Act
       violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    II. Mr. Robinson was improperly convicted of violating 18 U.S.C.
       § 924(c)(1)(A)(ii) because an attempted Hobbs Act robbery
       is not a predicate "crime of violence" . . . . . . . . . . . . . . . . . . . . . . . . 18

    III. and IV. The district court improperly relied on Mr. Robinson's
       co-conspirator's sentence to impose a 540-month term of
       imprisonment as to Mr. Robinson . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

# TABLE OF AUTHORITIES

**Federal Cases**                                                                  **Page(s)**

*Barker v. Wingo*, 407 U.S. 514 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Borden v. United States*, 141 S. Ct. 1817 (2021) . . . . . . . . . . . . . . . . . . . . . 22

*Braxton v. United States*, 500 U.S. 344 (1991) . . . . . . . . . . . . . . . . . . . . . . 22

*Descamps v. United States*, 570 U.S. 254 (2013) . . . . . . . . . . . . . . . . . . . . . 21

*Gall v. United States*, 552 U.S. 38  (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*New York v. Hill*, 528 U.S. 110 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Taylor v. Illinois*, 484 U.S. 400 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Pereida v. Wilkinson*, 141 S. Ct. 754 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Puckett v. United States*, 556 U.S. 129 (2009) . . . . . . . . . . . . . . . . . . .  28, 29

*Richardson v. United States*, 526 U.S. 813 (1999) . . . . . . . . . . . . . . . . . . . 27

*Taylor v. Illinois*, 484 U.S. 400 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

*Zedner v. United States*, 547 U.S. 489 (2006) . . . . . . . . . . . . . . . . . . . .  12, 13

*United States v. Armstrong*, 550 F.3d 382 (5th Cir. 2008) . . . . . . . . . . .  28

*United States v. Balleza*, 613 F.3d 432 (5th Cir. 2010) . . . . . . . . . . . . 32, 34

*United States v. Booker*, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . .  27

*United States v. Buck*, 847 F.3d 267 (5th Cir. 2017) . . . . . . . . . . . . . . . . 21

*United States v. Candia*, 454 F.3d 468 (5th Cir. 2006) . . . . . . . . . . . . . . 32

*United States v. Carey*, 589 F.3d 187 (5th Cir. 2009) . . . . . . . . . . . . . . . . 32

*United States v. Carlile*, 884 F.3d 554 (5th Cir. 2018) . . . . . . . . . . . . . . . 28

*United States v. Davis*, 139 S. Ct. 2319 (2019) . . . . . . . . . . . . . 10, 20, 21, 27

*United States v. Daychild*, 357 F.3d 1082 (9th Cir. 2004) . . . . . . . . . . . 16

*United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020) . . . . . . . . . . 19

*United States v. Dowdy*, 216 F. App'x 178 (3rd Cir. 2007) . . . . . . . . . . . 32

*United States v. Duhon*, 440 F.3d 711 (5th Cir. 2006) . . . . . . . . . . . 32, 34

*United States v. Garza*, 1 F.3d 1098 (10th Cir. 1993) . . . . . . . . . . . . . 32

*United States v. Gates*, 709 F.3d 58 (1st Cir. 2013) . . . . . . . . . . . . 15, 16, 17

*United States v. Gomez-Alvarez*, 781 F.3d 787 (5th Cir. 2015) . . . . . . . . 28

*United States v. Herbst*, 666 F.3d 504 (8th Cir. 2012) . . . . . . . . . . . . . 16

*United States v. Jones*, 935 F.3d 266 (5th Cir. 2019) . . . . . . . . . . . . 19, 26

*United States v. Joyner,* 924 F.2d 454 (2nd Cir. 1991) . . . . . . . . . . . . . 32

*United States v. Lynch*, 726 F.3d 346 (2d Cir. 2013) . . . . . . . . . . . . . . 16

*United States v. Martinez-Espinoza*, 299 F.3d 414 (5th Cir. 2002) . . . . . . 12

*United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) . . . . . . . . . . . . . 23

*United States v. MacDonald*, 456 U. S. 1 (1982) . . . . . . . . . . . . . . . . . 12

*United States v. Naidoo*, 995 F.3d 367 (5th Cir. 2021) . . . . . . . . . . . 29, 31

*United States v. Newsom*, 428 F.3d 685 (7th Cir. 2005) . . . . . . . . . . . . 32

*United States v. Olano*, 507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . 29

*United States v. Peltier*, 505 F.3d 389 (5th Cir. 2007) . . . . . . . . . . . . . 28

*United States v. Prieto*, 801 F.3d 547 (5th Cir. 2015) . . . . . . . . . . . . . . 28

*United States v. Reece*, 938 F.3d 630 (5th Cir. 2019) . . . . . . . . . . . . . . . . 21

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) . . . . . . . . . . . . . . 22

*United States v. Rhine*, 637 F.3d 525 (5th Cir. 2011) . . . . . . . . . . . . . . . . 28

*United States v. Saez*, 444 F.3d 15 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . 32

*United States v. Santos*, 553 U.S. 507 (2008) . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Seligsohn*, 981 F.2d 1418 (3rd Cir. 1992) . . . . . . . . . . . . 32

*United States v. Simmons*, 501 F.3d 620 (6th Cir. 2007) . . . . . . . . . . 32, 33

*United States v. Smith*, 654 F.3d 552 (5th Cir. 2011) . . . . . . . . . . . . . . . . 28

*United States v. Smith*, 957 F.3d 590 (5th Cir. 2020) . . . . . . . . . . . . . . . . 19

*United States v. Stewart*, 628 F.3d 246 (6th Cir. 2010) . . . . . . . . . . . . . . 16

*United States v. Taylor*, 979 F.3d 203, 208 (4th Cir. 2020),
    *cert. granted*, 141 S. Ct. 2882, 2021 U.S. LEXIS 3582
    (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25

*United States v. Taylor*, No. 20-1459, 2021 U.S. LEXIS 3582,
    2021 WL 2742792, at *1 (U.S. July 2, 2021) . . . . . . . . . . . . . . . . . . . 23

*United States v. Vinagre-Hernandez*, 925 F.3d 761 (5th Cir. 2019) . . . . . 12

*United States v. Williams*, 343 F.3d 423 (5th Cir. 2003) . . . . . . . . . . . . . 18

*United States v. Willingham*, 497 F.3d 541 (5th Cir. 2007) . . . . . . . . 29, 31

*United States v. Withers*, 100 F.3d 1142 (4th Cir. 1996) . . . . . . . . . . . . . 32

## U.S. Constitution, Statutes and Rules

U.S. CONST. amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 924(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. § 924(c)(1)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8, 10, 25

18 U.S.C. § 924(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 27

18 U.S.C. § 924(c)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

18 U.S.C. § 924(c)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 1114(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 1951(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3161(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

18 U.S.C. § 3161(h)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 3161(h)(7)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15, 18

18 U.S.C. § 3162(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1951(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Crim. P. 52(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## Other Authorities

S. Rep. No. 93-1021 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

USSG §1B1.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

USSG §1B1.2, comment. (n.3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

USSG §2K2.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

USSG §3D1.2, comment. (n.8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States Sentencing Commission, *United States Sentencing Commission Quarterly Data Report 1st Quarter 2021 Preliminary Cumulative Data (October 1, 2020, through December 31, 2020)*, Table 6, https://www.ussc.gov/.../quarterly-sentencing-updates/ USSC_Quarter_Report_1st_FY21.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231. On July 13, 2021, Edward Eugene Robinson filed a timely Notice of Appeal from the judgment and sentence entered by the district court on July 9, 2021. (ROA.516-21, 522-23.) This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as this is an appeal from a final judgment entered by the United States District Court for the Northern District of Texas. Jurisdiction is also invoked pursuant to 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred when it denied Mr. Robinson's motion to dismiss his indictment for a violation of the Speedy Trial Act.

2. Because an attempted robbery is not a crime of violence as defined by 18 U.S.C. § 924(c)(3), Mr. Robinson's convictions under Counts Three and Five, charging him with violating 18 U.S.C. § 924(c)(1)(A)(ii), and the corresponding 168 months of imprisonment, should be vacated.

Note: This issue is foreclosed by circuit precedent. Mr. Robinson raises this issue for future review.

3. Seeking to avoid what it considered to be an unwarranted sentencing disparity, the district court improperly relied on the sentence imposed on Mr. Robinson's alleged co-conspirator to upwardly vary and

impose a 540-month term of imprisonment as to Mr. Robinson. In considering sentencing disparity, the district court should have relied on national statistics, rather than the sentence imposed on a co-conspirator. As a result, Mr. Robinson's sentence is significantly greater than what would be supported by the sentence imposed for Hobbs Act robberies nationally.

Note: This issue is foreclosed by circuit precedent. Mr. Robinson raises this issue for future review.

4. The district court plainly erred in upwardly varying in the sentence imposed on Mr. Robinson based on another defendant's sentence where there was no showing that a disparity between the two would have been unwarranted.

## STATEMENT OF THE CASE

<u>Course of Proceedings and Disposition Below</u>

Mr. Robinson, who pled not guilty, was found guilty by a jury of the following offenses charged in the first superseding indictment: (1) conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One); (2) interference with commerce by robbery and attempted robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Counts Two and Four); and using, carrying, and brandishing a firearm during a crime of

violence, in violation of 18 U.S.C. §§(1)(A)(ii) and 2 (Counts Three and Five).  (ROA.108-16, 493-94, 516, 691.)  The jury also found by Special Verdict Form that a firearm was brandished with respect to Counts Three and Five.  (ROA.494.)

Statement of Facts

The government introduced the following evidence in support of its case against Mr. Robinson.  Law enforcement became aware of cell phone store robberies in the Fort Worth area occurring in the summer of 2019.  (ROA.772.)  The Los Angeles Division of the FBI was investigating similar robberies occurring in California and identified Aaron Hardwick as a suspect.  (ROA.775-76.)

Using telephone and email account records belonging to, or associated with, Mr. Robinson, Aaron Hardrick, and Ncholeion Hollie, the government was able to show that the three were in frequent contact with each other and that the telephones were in proximity to several of the robbery locations both before and during the alleged robberies.  (ROA.776-78, 779, 781-93, 898-99; GE1, GE2, GE3, GE4, GE5.)  In addition, Ms. Hollie had a call recorder application installed on her telephone that recorded incoming and outgoing calls.  (ROA.809-10.)  A number of calls were between Ms. Hollie and telephone numbers that had

been identified as associated with Mr. Robinson and Mr. Hardrick. (ROA.810.)  The government introduced transcripts of some of the conversations found on her telephone, including conversations occurring on days when robberies occurred, and played the audio tapes for the jury. (ROA.719-20, 811-32; GE8 and GE8A.)  A law enforcement officer testified that she recognized the voices of Ms. Hollie, Mr. Hardrick, and Mr. Robinson on the recordings.  (ROA.796, 814-15.)

**As to Counts One, Two, and Four:**  An employee of a Sprint store located at 1540 Eastchase Parkway in Fort Worth, Texas, testified that she was robbed on June 14, 2019, by two men.  (ROA.708-09, 711-14.)  One of the men had a firearm, while the second man had a Taser.  (ROA.716, 718.) The man with the Taser threatened to tase her if she continued to talk. (ROA.715-16, 718.)  Although the two men were masked, the employee identified Mr. Robinson as the individual with the Taser based on him pulling his mask down during the robbery.  (ROA.722-23, 730, 736.)  She further testified that she was afraid.  (ROA.719, 735.)  The two men took a number of cellular phones from the store's safe, which they took away in two duffle bags.  (ROA.716-17, 719, 721, 731.)  The store had video surveillance cameras which recorded the robbery.  (ROA.723-24.)  The video was introduced into evidence, and played for the jury  (ROA.723-24,

728-32, 734-35; GE13.) The store operated in interstate commerce based on its New York ownership, use of the internet, acceptance of credit card payments, and sales of cellular devices not manufactured in Texas. (ROA.709-11, 764, 772.)

**As to Counts One, Three, and Five:** An employee of a Sprint store located at 2100 Airport Freeway in Bedford, Texas, testified that she was robbed on June 19, 2019, by two men. (ROA.741-758, 761-62.) The shorter of the two men had a firearm. (ROA.748.) The two men placed cellular telephones taken from the store's safe into a green duffle bag. (ROA.750.) She testified that she was afraid. (ROA.748.) The store had video surveillance cameras which recorded the robbery. (ROA.751-752.) The video was introduced into evidence. and played for the jury (ROA.751-53; GE16.) The store operated in interstate commerce based on its non-Texas ownership, use of the internet, acceptance of credit card payments, and sales of cellular devices not manufactured in Texas. (ROA.744-45, 764, 772.)

**As to Count One:** A regional security manager from Sprint testified that a robbery occurred occurred on May 30, 2019, at a Sprint store located at 2636 E. Berry Street in Fort Worth, Texas. (ROA.765.) The store had

video surveillance.  (ROA.766.)  A video of the robbery and still photographs were introduced into evidence.   (ROA.766-68; GE27, GE28.)

Djovonte Lewis, who was incarcerated for cell phone store robberies, testified that he participated in several such robberies in California that were arranged by Mr. Robinson.  (ROA.916, 925-26.)  Lewis testified as to the modus operandi used in the robberies:  surveillance on the store, only robbing stores when no customers were present, and the use of firearms and Tasers.  (ROA.924, 926-27.)  He came to Texas twice to participate in robberies with Mr. Robinson.  (ROA.931.)  He testified that he, Mr. Robinson, Mr. Hardrick, and another individual robbed a T-Mobile sore on July 21, 2019, located at 1700 Precinct Line Road, in Hurst, Texas.  (ROA.934-44.)  Ms. Hollie acted as a lookout.  (ROA.939.)  Lewis identified Mr. Robinson and Ms. Hollie as the voices on government exhibit 8RR, which was purportedly of the robbery on July 21st.  (ROA.937; GE8RR.)  He also identified a photograph of the robbery in which Mr. Robinson is depicted.  (ROA.940-41; GE24.)  Lewis falsely identified Mr. Robinson as being a participant in a robbery of a T-Mobile store on July 23, 2019, in Bedford, Texas, based on his joint participation in the robbery.  (ROA.945.)  It was established that Lewis was not present at the robbery on July 23rd.  (ROA.969-70.)

Willie Warren, Ms. Hollie's father and Mr. Hardrick's cousin, identified Mr. Robinson from a still photograph taken from the video of the May 30th robbery of the Sprint store — although the photograph showed only the person's eyes.  (ROA.767, 898, 904; GE28.)  He also identified Mr. Robinson as the person in a photograph of the June 19th robbery.  (ROA.754, 905; GE17.)  He also testified that it was Mr. Robinson's voice on government exhibit 8A, which are audio tapes from calls recorded by the application on Ms. Hollie's telephone.  (ROA.906; GE8A.)

During a warranted search of Ms. Hollie's apartment, law enforcement seized the following evidence:  (1) a gray and orange duffle bag, (2) a semi-automatic pistol found under the bed in the master bedroom, (3) a Taser that appeared to be a cellular telephone; (4) other firearms located in a storage closet on the balcony, and (4) a lease rental agreement for a Honda Pilot that listed Mr. Robinson's name.  (ROA.874-84.)

Sentencing Proceedings

In computing the offense level, because Count One alleged that Mr. Robinson conspired to commit five robberies, the probation officer relied on USSG §1B1.2(d), USSG §1B1.2, comment. (n.3), and USSG §3D1.2, comment. (n.8), to treat the conspiracy count as if Mr. Robinson had been

convicted of five separate counts of conspiracy to commit robbery. (ROA.1356; PSR, ¶¶ 30-78.)  After application of grouping rules, the probation officer calculated the total offense level for Counts One, Two, and Four to be 35.  (ROA.1356-60; PSR, ¶¶ 31-78.)

Based on a total offense level of 35 and a criminal history category of IV, the advisory imprisonment range was calculated to be 235 to 293 months.  (ROA.1360; PSR, ¶¶ 78, 149.)  As for Counts Three and Five, section 924(c)(1)(A)(ii) required a minimum seven-year term of imprisonment for each count, to be served consecutively to any other sentence imposed.  *See* 18 U.S.C. § 924(c)(1)(A)(ii); USSG §2K2.4. (PSR, ¶¶ 79-80, 148.)

The district court varied upwardly to impose a 540-month term of imprisonment.  (ROA.673.)  The court ordered Mr. Robinson to serve a term of 124 months as to Counts One, Two, and Four, and 84 months as to Counts Three and Five, with each count to run consecutively to the other. (ROA.517, 665-66.)  As to Counts One, Two, and Four, the court ordered a three-year term of supervised release, and a five-year term as to Counts Three and Five, all to run concurrently, for a total of five years of supervised release.  (ROA.517.)

Mr. Robinson was ordered to pay restitution in the total amount of $390,912.54. (ROA.519-20.) He was also ordered to pay the mandatory special assessment of $500. (ROA.516.) No fine or cost of incarceration were imposed based on the court's finding that Mr. Robinson lacked the financial resources and the future earning capacity to pay a fine or costs of incarceration. (ROA.519.)

## SUMMARY OF THE ARGUMENT

1. The district court erred in denying Mr. Robinson's motion to dismiss the indictment on Speedy Trial Act (STA) grounds where he was not indicted within 30 days of his arrest as required by 18 U.S.C. § 3161(b). Counsel for Mr. Robinson moved for a continuance for the time to indict without conferring with Mr. Robinson. Despite the plain language of 18 U.S.C. § 3161(b) excluding time resulting from a continuance granted at the request of the defendant or his counsel, and other circuits' holding that an attorney need not confer with his client before requesting a continuance for STA purposes, Mr. Robinson asserts that the district court still erred given his early rejection of defense counsel's representation. The continuance should have been reconsidered and denied, and the time not excluded in determining whether the STA should have been denied.

2.  In Counts Three and Five, both a completed Hobbs Act robbery and an attempted Hobbs Act robbery were alleged as the predicate crime of violence for Mr. Robinson's convictions under 18 U.S.C. 924(c)(1)(A)(ii).  In addition, because the jury charge permitted conviction on each count without requiring unanimity on which offense was violated, it cannot be said upon which offense Mr. Robinson was convicted.  An attempted robbery is not a crime of violence under either the elements or residual clause of 18 U.S.C. § 924(c)(3).  In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court held that the residual clause is unconstitutionally vague.  The elements clause is not applicable because an attempted robbery does not necessarily have as an element the use, attempted use, or threatened use of physical force against the person or property of another.  Mr. Robinson was therefore improperly convicted on Counts Three and Five.

Note:  This issue is foreclosed by circuit precedent.

3.  In varying upward, the district court improperly relied on an alleged co-conspirator's sentence rather than looking to national sentencing disparities.  According to data from the United States Sentencing Commission, the national average term of imprisonment for robbery is 106

months.  Mr. Robinson's guideline range was 235 to 293 months.  There was no need to upwardly depart to impose a reasonable sentence.

Note:  This issue is foreclosed by circuit precedent.

4.  The district court plainly erred in upwardly varying in the sentence imposed on Mr. Robinson based on another defendant's sentence where there was no showing that the two were similarly situated.  Unlike Mr. Robinson, his co-defendant was convicted of, and sentenced for, robberies in both Texas and California.

# ARGUMENT

## I.

## The district court erred in denying Mr. Robinson's motion to dismiss the indictment based on a Speedy Trial Act violation

<u>Standard of Review</u>

"This [C]ourt reviews 'interpretations of the [Speedy Trial Act] de novo,' while facts are accorded 'clear-error deference.'" *United States v. Vinagre-Hernandez*, 925 F.3d 761, 765 (5th Cir. 2019) (quoting *United States v. Martinez-Espinoza*, 299 F.3d 414, 416 (5th Cir. 2002)).

<u>Argument</u>

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI. Congress passed the Speedy Trial Act of 1974, 18 U. S. C. § 3161 et seq., "to give effect to the sixth amendment right." *United States v. MacDonald*, 456 U. S. 1, 7, n. 7 (1982) (quoting S. Rep. No. 93-1021, p. 1 (1974)).

The Speedy Trial Act (STA) is intended to serve both the interests of the public and the defendant in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A); *Zedner v. United States*, 547 U.S. 489, 501 (2006). The public has an interest in swift justice because a timely trial has a potentially greater deterrent effect, and a timely trial reduces the defendant's opportunity to

commit crimes while on pretrial release. *Zedner*, 547 U.S. at 501. The

criminal defendant has an interest in a speedy trial to prevent oppressive

pretrial incarceration, to minimize the defendant's anxiety and concern,

and to limit the possibility that the defense will be impaired. *Barker v.

Wingo*, 407 U.S. 514, 520-22 (1972) (explaining the interests of a defendant

in a speedy trial for Sixth Amendment purposes).

The Speedy Trial Act provides, in relevant part, that any "indictment

charging an individual with the commission of an offense shall be filed

within thirty days from the date on which such individual was arrested or

served with a summons in connection with such charges." 18 U.S.C. §

3161(b). If a defendant is not indicted before the thirty-day clock expires,

the charges "shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)

(1).

Mr. Robinson was arrested on September 23, 2019, which would have

required that the government indict him no later than October 23, 2019.

(ROA.67, 800.) He was not indicted until December 3, 2019 — 71 days

later. (ROA.75-78.) On November 16, 2020, Mr. Robinson filed a motion

to dismiss the indictment based on Speedy Trial Act (STA) violations,

specifically, the government's failure to indict him within 30 days from the

date of his arrest. (ROA.287-300.) He urged dismissal despite his counsel

at the time having filed an "Unopposed Motion to Continue Time to Indict," on October 16, 2019, sans any consultation or consent from Mr. Robinson personally.[1]  (ROA.62-65, 287-88.)

The motion requested a continuance that amounted to 47 days — until December 9, 2019 — to give time for defense counsel, who was not appointed until October 15, 2019, to review discovery, to investigate the case, to discuss the case and discovery with the client, and to engage in plea negotiations with the government.  (ROA.63.)  She urged the district court to grant the continuance in the interest of judicial economy and to serve the ends of justice, and because the granting of the continuance would outweigh the interest of the public in a speedy trial.  (ROA.64.)  *See* 18 U.S.C. § 3161(h)(7)(A).  The magistrate judge entered an electronic order on October 16, 2019, granting the motion continuing the time for the government to indict for the reasons stated in the unopposed joint motion. (ROA.7.)

The government filed its response on November 23, 2020. (ROA.311-27.)  The district court entered an order denying the motion on December 2, 2020.  (ROA.340-44.)  In the order, the court held that Mr.

---

[1]   He also moved for dismissal under the STA because more than 70 days had elapsed from the date of his arrest to his proposed trial date in December of 2020. (ROA.288-89.)  Mr. Robinson's trial did not commence until March 8, 2021.  (ROA.15.) No new motion for speedy trial violations was filed by defense counsel.  Mr. Robinson is not challenging the denial of his motion based on the time between indictment and trial.

Robinson's complaint failed because the plain language of the statute excluding time "resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel" meant that defense counsel has authority to seek a STA continuance sans notification to, or approval from, the client.  (ROA.341.)  *See* 18 U.S.C. § 3161(h)(7)(A).  The court also cited to *United States v. Gates*, 709 F.3d 58, 66 (1st Cir. 2013), for the proposition that "defense counsel has the power to seek an STA continuance without first informing his client or obtaining his client's personal consent."  (ROA.341.)

It is a well-settled principle that express consent by counsel is controlling with respect to scheduling and trial management matters without any requirement that the defendant personally acquiesce.  *See New York v. Hill*, 528 U.S. 110, 115 (2000); *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988).  In such instances, "the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."  *Hill*, 528 U.S. at 115 (internal quotation marks omitted).

Although other circuits have specifically addressed the question of whether, in the STA context, defense counsel must consult with the client before moving for a continuance, neither the Supreme Court nor this Court

have.  *See*, *e.g.*, *Gates*, 709 F. 3d at 66 ("[I]n the ordinary course and within the confines of the STA exclusion provisions, defense counsel has the power to seek an STA continuance without first informing his client or obtaining his client's personal consent."); *United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013) ("[A] district court may grant a continuance sought by counsel without the consent of the defendant so long as the district court determines that the ends of justice would be served . . . and sets forth its reasons on the record."); *United States v. Stewart*, 628 F.3d 246, 254 (6th Cir. 2010) (defendant's consent to the continuance is unnecessary for a judge to grant a motion for a continuance in furtherance of the ends of justice); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012) ("[The defendant's] opposition to his counsel's request for a continuance does not prevent that time from being excluded from the speedy trial calculation."); *United States v. Daychild*, 357 F.3d 1082, 1094 (9th Cir. 2004) (rejecting argument that defense counsel's requested continuances were not excludable under 18 U.S.C. § 3161(h)(1)(D)).

This is a matter of more than "scheduling and trial management matters."  *Hill*, 528 U.S. at 115; *Taylor*, 484 U.S. at 417-18.  A defendant cannot "enjoy the right to a speedy trial" as guaranteed by the Sixth Amendment and codified by the STA, if that right can be invalidated by his

attorney without any consultation whatsoever with his client.  To permit counsel to make that decision without consultation with his client denies a valuable right to a defendant.

Even if this Court determines that, in "the ordinary course," *Gates*, 709 F.3d at 66, defense counsel has authority to seek a continuance sans input from his client, the Court should find that the circumstances here are not the ordinary course and warrant relief.  The magistrate judge appointed the Federal Public Defender to represent Mr. Robinson.  (ROA.89.)  Mr. Robinson made clear very early on — about a week — to the Assistant Federal Public Defender (AFPD), and to the court, that he was dissatisfied with her representation, which included her decision to seek the continuance.  (ROA.68, 72-73, 89-92, 154.)

The AFPD moved for permission to withdraw from representing Mr. Robinson on October 22, 2019.  (ROA.68-69.)  Mr. Robinson repeatedly asked for the appointment of new counsel.  (ROA.68.)  He sought counsel outside the Federal Public Defender's Office so that he could raise claims regarding the representation provided by the Office.  (ROA.68, 73.)

It was Mr. Robinson's position then, and now, that his attorney did not speak for him when she requested the continuance.  He should not have been bound by a decision that he clearly and vociferously opposed.  The

continuance should have been reconsidered under the circumstances, and the time not excluded under 18 U.S.C. § 3161(h)(7)(A). Given counsel's failure to secure his client's consent to the motion for a continuance, the district court erred when it failed to take these circumstances under consideration in denying the motion to dismiss.

II.

**Mr. Robinson was improperly convicted of violating
18 U.S.C. § 924(c)(1)(A) because an attempted Hobbs Act robbery
is not a predicate "crime of violence"**

<u>Standard of Review</u>

On appeal, Mr. Robinson contends that an attempted Hobbs Act Robbery is not a predicate "crime of violence" for purposes of conviction under 18 U.S.C. § 924(c)(1)(A). He did not object on this ground in the district court. Thus, review is for plain error. *United States v. Williams*, 343 F.3d 423, 431 (5th Cir. 2003). "Plain error review consists of four prongs: (1) there must be an error; (2) the error must be clear or obvious, rather than subject to reasonable dispute; (3) the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings'; and (4) the court must decide in its discretion to correct the error because it seriously affects the fairness, integrity or public reputation of judicial

proceedings." *United States v. Jones*, 935 F.3d 266, 271 (5th Cir. 2019) (internal quotation marks and citations omitted).

This issue has been foreclosed by *United States v. Smith*, 957 F.3d 590, 595 (5th Cir. 2020), in which this Court agreed with the holding in *United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020), that "[w]hen a substantive offense would be a crime of violence under 18 U.S.C. § 924(c)(3)(A), an attempt to commit that offense is also a crime of violence." Mr. Robinson notes, however, that the offense in *Smith* was an attempted murder in violation of 18 U.S.C. § 1114(3). *Smith*, 957 F.3d at 595. *Smith's* holding is too broad because it does not take into account that an attempt to commit a crime of violence does not necessarily involve the attempted use of physical force as some crimes of violence can be accomplished merely though an attempt to threaten to use force which does not meet the definition in section 924(c)(3)(A). An attempted murder meets section 924(c)(3)(A)'s definition, while attempted Hobbs Act robbery does not.

Based on this Court's extant holding in *Smith*, Mr. Robinson cannot satisfy the requirements of the plain-error standard. Because there is a pending Supreme Court case in which this exact issue will be considered, however, Mr. Robinson raises it on appeal in order to preserve it for further review.

<u>Argument</u>

Section 924(c) subjects to criminal liability "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c). The statute contains its own definition of the term "crime of violence," which has two subparagraphs, (A) and (B), that provide alternative and independent definitions. A felony offense is a "crime of violence" for purposes of section 924(c) if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Or, if by its nature, the offense "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Courts refer to these clauses as the "elements clause" and "residual clause," respectively. *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019).

In *Davis*, the Supreme Court held that 18 U.S.C. § 924(c)(3)(B)'s "residual clause" is unconstitutionally vague in violation of due process clause and separation of powers principles. Specifically, the Supreme Court held section 924(c)(3)(B) to be unconstitutionally vague because it provided no reliable way to determine which offenses qualify as crimes of

violence.  *Davis*, 139 S. Ct. at 2323-2324.  The Supreme Court thereby

rejected the categorical approach in which a judge classified an offense as a

crime of violence by determining the degree of risk associated with "a

crime's imagined 'ordinary case.'"  *Davis*, 139 S. Ct. at 2326.  Consequently,

no offenses, including attempted robbery, qualify as a COV under the

residual clause.  As a result, Mr. Robinson's convictions under section

924(c) can be sustained only if the convictions were predicated on a crime

of violence as defined by the elements clause.

To determine whether an offense constitutes a "crime of violence"

under the elements clause, courts employ the "categorical" approach.

*Descamps v. United States*, 570 U.S. 254, 258 (2013); *United States v.

Buck*, 847 F.3d 267, 274 (5th Cir. 2017).  Under the categorical approach,

this Court "looks only to the statutory definitions — the elements — of a

defendant"s offense, and not to the particular facts underlying the

convictions."  *United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019)

(quoting *Buck*, 847 F.3d at 274).

The Court determines whether the elements of the underlying offense

necessarily require "the use, attempted use, or threatened use of physical

force."  *See* 18 U.S.C. § 924(c)(3)(A)).  An offense does not qualify as a

predicate unless "the least serious conduct it covers falls within the

elements clause." *Borden v. United States*, 141 S. Ct. 1817, 1832 (2021) (plurality opinion); *see also Pereida v. Wilkinson*, 141 S. Ct. 754, 763 (2021) (categorical approach considers whether the "minimum conduct" necessary to violate the statute fits within the relevant category). Thus, if the minimum conduct that violates a criminal statute does not categorically satisfy the definition of a crime of violence, then that offense cannot be classified as a crime of violence. All of the means of violating a statute must require proof of use, attempted use, or threatened use of force; if one means of violating the statute does not require such proof, then the statute is not a section 924(c) predicate. *See Borden*, 141 S. Ct. at 1832 (plurality opinion).

To be convicted of an attempt, a defendant must (1) have the intent to commit each element of the completed crime, and (2) take a "substantial step" toward the crime's completion. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 106-107 (2007) ("As was true at common law, the mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct."); *Braxton v. United States*, 500 U.S. 344, 349 (1991) ("For [the defendant] to be guilty of an attempted killing under 18 U.S.C. § 1114, he must have taken a substantial step towards that crime, and must also have had the requisite mens rea").

The Fourth Circuit in *United States v. Taylor*, 979 F.3d 203, 208 (4th Cir. 2020), *cert. granted*, 141 S. Ct. 2882, 2021 U.S. LEXIS 3582 (2021), held that an attempted Hobbs Act robbery fails to satisfy the requirements of section 924(c)(3)(A)'s elements clause as well because attempted Hobbs Act robbery does not necessarily require proof that a defendant used, attempted to use, or threatened to use force against the person or property of another. The Supreme Court recently granted certiorari in the Fourth Circuit case on the question of "whether 18 U.S.C. 924(c)(3)(A)'s definition of 'crime of violence' excludes attempted Hobbs Act robbery, in violation of 18 U.S.C. 1951(a)." *See United States v. Taylor*, No. 20-1459, 2021 U.S. LEXIS 3582, 2021 WL 2742792, at *1 (U.S. July 2, 2021).

Although having previously concluded that a completed Hobbs Act robbery "categorically" qualifies as a crime of violence under section 924(c)(3)(A) because it involves, at a minimum, the threat to use physical force, *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019), the Fourth Circuit took the view that attempted Hobbs Act robbery does not. *Taylor*, 979 F.3d at 207-208. The Fourth Circuit found that

> a straightforward application of the categorical approach to attempted Hobbs Act robbery yields a different result. This is so because, unlike substantive Hobbs Act robbery, attempted Hobbs Act robbery does not invariably require the use, attempted use, or threatened use of physical force. The Government may obtain a conviction for attempted Hobbs Act

robbery by proving that: (1) the defendant specifically intended to commit robbery by means of a threat to use physical force; and (2) the defendant took a substantial step corroborating that intent. The substantial step need not be violent. . . . Where a defendant takes a nonviolent substantial step toward threatening to use physical force — conduct that undoubtedly satisfies the elements of attempted Hobbs Act robbery — the defendant has not used, attempted to use, or threatened to use physical force. Rather, the defendant has merely attempted to threaten to use physical force. The plain text of § 924(c)(3)(A) does not cover such conduct.

*Taylor*, 979 F.3d at 208 (internal citation omitted).

The Fourth Circuit also noted that the position held by the Fifth Circuit in *Smith* and other circuits — that an attempt to commit a "crime of violence" necessarily constitutes an attempt to use physical force — is flawed because "certain crimes of violence — like Hobbs Act robbery, federal bank robbery, and carjacking — may be committed without the use or attempted use of physical force because they may be committed merely by means of threats." *Taylor*, 979 F.3d at 208.

The Fourth Circuit further explained its holding that attempted Hobbs Act robbery is not a crime of violence:

Some crimes of violence can be accomplished merely through the threatened use of force. The crime at issue here — attempted Hobbs Act robbery — is just such a crime. But an attempt to threaten force does not constitute an attempt to use force. A person who attempts to commit Hobbs Act robbery by passing a threatening note to a store cashier has attempted the planned robbery without using or attempting to use physical force. He may case the store that he intends to rob, discuss

> plans with a coconspirator, and buy weapons to complete the
> job. But none of this conduct involves an attempt to use
> physical force, nor does it involve the use of physical force or
> the threatened use of physical force. In these circumstances,
> the defendant has merely taken nonviolent substantial steps
> toward threatening to use physical force. The plain text of §
> 924(c)(3)(A) does not embrace such activity.

*Taylor*, 979 F.3d at 209. For these reasons, an attempted Hobbs Act

robbery is not a crime of violence.

This reasoning is applicable to Mr. Robinson who was convicted of

violating 18 U.S.C. 924(c)(1)(A)(ii) in Counts Three and Five of the first

superseding indictment. Both Count Two and Count Four charged

conjunctively that Mr. Robinson did knowingly and intentionally

unlawfully obstruct, delay, and affect commerce, and attempt to unlawfully

obstruct, delay, and affect commerce. (ROA.112, 114.) In the jury charge,

the court likewise instructed the jurors that "Title 18, United States Code,

Section 1951(a), makes it a crime for anyone to obstruct, delay, or affect

commerce by robbery. Robbery means the unlawful taking or obtaining of

or attempting or conspiring to unlawfully take or obtain personal property

from the person or in the presence of another, against her will, by means of

actual or threatened force, or violence, or fear of injury, immediate or

future, to her person or property in her custody or possession." (ROA.486.)

The court further instructed the jury that

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First:  That the defendant unlawfully obtained or attempted to obtain personal property from a person or in her presence, against her will;

Second:  That the defendant did so by means of actual or threatened force, or violence, or fear of injury, immediate or future, to her person or property in her custody or possession; and

Third:  That the defendant's conduct in any way or degree obstructed, delayed, or affected commerce or the movement of any article or commodity in commerce.

(ROA.486.)

The jury was given a general unanimity verdict form.  (ROA.493-94) Because no specific instruction was given that the jury had to reach a unanimous decision as to whether he actually committed a Hobbs Act robbery or attempted to do so — the jury could have convicted Mr. Robinson on Counts Two and Four for either Hobbs Act robbery or an attempted Hobbs Act robbery.  *Compare United States v. Jones*, 935 F.3d 266, 271-274 (5th Cir. 2019) (inclusion of RICO conspiracy as an invalid crime of violence predicate, along with drug trafficking, held to be a violation of the defendant's substantial rights where jury rendered a general verdict and it could not be determined which conviction served as the basis for the section 924 convictions).

Because the Sixth Amendment requires unanimity as to the elements of the offense, *Richardson v. United States*, 526 U.S. 813, 817 (1999), and because "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them," *United States v. Santos*, 553 U.S. 507, 514 (2008); *see also Davis*, 139 S. Ct. at 2333 (stating that the rule of lenity "teach[es] that ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor"), it would be improper to permit Mr. Robinson's convictions to stand.

An attempted Hobbs Act robbery is not a crime of violence under either definition in section 924(c)(3). Mr. Robinson was improperly convicted and sentenced on Counts Three and Five.

III. and IV.

**The district court improperly relied on Mr. Robinson's co-conspirator's sentence to impose a 540-month term of imprisonment as to Mr. Robinson**

Standard of Review

After *United States v. Booker*, 543 U.S. 220 (2005), appellate review of sentencing decisions is limited to determining whether they are reasonable under the abuse-of-discretion standard of review. *Gall v. United States*, 552 U.S. 38, 46 (2007). "Reasonableness has two parts: procedural and substantive reasonableness." *United States v. Rhine*, 637

F.3d 525, 527 (5th Cir. 2011). Procedural reasonableness "requires that the district court calculate the Guidelines range, consider the [18 U.S.C.] § 3553(a) factors, and explain the sentencing decision." *Id*. at 528. For preserved errors, this Court reviews the district court's interpretation and application of the sentencing guidelines de novo and its findings of fact for clear error. *See United States v. Gomez-Alvarez*, 781 F.3d 787, 791 (5th Cir. 2015). If there was no procedural error, then the Court looks to "the substantive reasonableness of the sentence, considering the factors in 18 U.S.C. § 3553(a)." *United States v. Smith*, 654 F.3d 552, 555 (5th Cir. 2011) (quoting *United States v. Armstrong*, 550 F.3d 382, 404 (5th Cir. 2008)).

Because Mr. Robinson did not object to his sentence in the district court, however, the Court reviews his sentencing issue for plain error. *See United States v. Carlile*, 884 F.3d 554, 556 (5th Cir. 2018); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007). To show plain error, Mr. Robinson must show: (1) an error or defect not affirmatively waived; (2) that is "clear or obvious, rather than subject to reasonable dispute"; and (3) that affected his substantial rights. *United States v. Prieto*, 801 F.3d 547, 549-50 (5th Cir. 2015) (quoting *Puckett v. United States*, 556 U.S. 129, 135

(2009)). If these three conditions are satisfied, this Court may exercise discretion to remedy the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

In Issue II, Mr. Robinson challenges the district court's reliance on the need to avoid sentencing disparity with his alleged co-conspirator to vary upwardly, rather than looking to national disparities. This issue has been foreclosed by *United States v. Willingham*, 497 F.3d 541 (5th Cir. 2007), in which this Court held that it was plain error for a district court to rely on a national sentencing average to vary downwardly in sentencing a defendant. *See also United States v. Naidoo*, 995 F.3d 367, 383 (5th Cir. 2021) (reaffirming *Willingham)*.

Based on the holding in *Willingham*, reaffirmed by *Naidoo*, Mr. Robinson cannot satisfy the requirements of the plain-error standard. Because there are a number of circuits who agree that 18 U.S.C. § 3553(a)(6) refers to national sentencing disparities, including this Court, Mr. Robinson wishes to have this issue raised on appeal in order to preserve it for future review.

In Issue III, Mr. Robinson also contends that the district court committed plain error when it upwardly departed based on the sentence

imposed on Mr. Hardrick without determining whether the two were
similarly situated.

Argument

The district court varied from the advisory guidelines range of 235 to
293 months as to Counts One, Two, and Four, and two consecutive 84-
month sentences as to Counts Three and Five (293 months plus 168
months = 461 months) to impose a total sentence of 540 months, which
amounted to a variance of 79 months and a sentence of 372 months for
Counts One, Two. and Four.  (ROA.666, 671.)  The court stated that the
upward variance was warranted because (1) Mr. Robinson was a
"determined recidivist," with a continuous record of criminal conduct,
which included disciplinary issues while incarcerated, (ROA.671-72); (2)
Mr. Robinson had engaged in a "spree of robberies" that were not
considered in the guideline calculation, (ROA.672); (3) Mr. Robinson's
criminal history category underrepresented his prior criminal behavior;
and (4) the offense was heinous.  (ROA.672-73).

In addition, the court stated that it was relying on the need to avoid
"unnecessary sentencing disparity" with the 540-month term of
imprisonment that the court had previously imposed on Aaron Hardrick.
(ROA.673.)  The court erred when it considered the need to avoid disparity

between the sentences of Mr. Robinson's co-conspirator, rather than looking to the average nationwide sentences imposed for Hobbs Act robberies.[2]

Sentencing disparity is an appropriate factor to be considered in imposing a sentence. Pursuant to 18 U.S.C. § 3553(a)(6), a sentencing court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

In *United States v. Naidoo*, 995 F.3d 367, 383 (5th Cir. 2021), this Court confirmed its holding in *United States v. Willingham*, 497 F.3d 541, 544 (5th Cir. 2007), that "[n]ational averages of sentences" with "no details underlying the sentences are unreliable to determine unwarranted disparity." "Indeed, where averages 'only reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants,' they are 'basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted.'" *Naidoo*, 995 F.3d at 383 (quoting *Willingham*, 497 F.3d at 544-45).

---

[2] The court also noted that, if on appeal or otherwise, it was determined that the guideline calculations were incorrect, the court would have imposed the same sentence "based on [the court's] study of the facts and evidence of this case and what was given to [court] by Congress and the American people in 18 United States Code, Section 3553 and the factors listed therein." (ROA.674.)

Other circuits, however, have concluded that section 3553(a)(6) is directed nationally rather than a comparison to the sentences of co-defendants. *See, e.g., United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007); *United States v. Dowdy*, 216 F. App'x 178, 180-81 (3rd Cir. 2007) (citing *United States v. Seligsohn*, 981 F.2d 1418, 1428 (3rd Cir. 1992)); *United States v. Saez*, 444 F.3d 15, 18 (1st Cir. 2006); *United States v. Newsom*, 428 F.3d 685, 689 (7th Cir. 2005); *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996); *United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993); *United States v. Joyner,* 924 F.2d 454, 460-61 (2nd Cir. 1991).

In fact, this Court has itself stated that section 3553(a)(6)'s disparity factor requires a district court to avoid only unwarranted disparities between similarly situated defendants nationwide. *United States v. Balleza*, 613 F.3d 432, 435 (5th Cir. 2010); *United States v. Candia*, 454 F.3d 468, 476 (5th Cir. 2006). "The § 3553(a) disparity factor involves consideration of 'the need to avoid disparity among similarly-situated defendants nationwide rather than disparity with [a defendant]'s differently situated codefendant.'" *Candia*, 454 F.3d at 476 (quoting *United States v. Duhon*, 440 F.3d 711, 721 (5th Cir. 2006)); *see also United States v. Carey*, 589 F.3d 187, 196 (5th Cir. 2009) (finding that defendant's unwarranted

sentencing disparities argument was undermined by the imposition of analogous sentences in other courts).

As the Sixth Circuit explained in *Simmons*, "[s]ubsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct. . . . It is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants." *Simmons*, 501 F.3d at 624 (internal citations omitted). "Instead, § 3553(a)(6) is there to ensure nationally uniform sentences among like offenders so as to leave room to depart downward for those defendants who are truly deserving of leniency." *Id*. at 625 (citations omitted).

According to the United States Sentencing Commission, for defendants convicted of robbery and sentenced under the guidelines, the mean term of imprisonment is 106 months. *See* United States Sentencing Commission, *United States Sentencing Commission Quarterly Data Report 1st Quarter 2021 Preliminary Cumulative Data (October 1, 2020, through December 31, 2020)*, Table 6, https://www.ussc.gov/.../quarterly-sentencing-updates/USSC_Quarter_Report_1st_FY21.pdf. The advisory guideline range calculated for Mr. Robinson — 235 to 293 months — was

already far greater than the national mean term of imprisonment; there was no need to adjust further to impose a reasonable sentence.

The district court also plainly erred because it imposed the upward variance without a showing that Mr. Robinson and Mr. Hardrick were similarly situated. Section 3553(a)(6) "requires the district court to avoid only unwarranted disparities between similarly situated defendants nationwide, and it does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated." *Balleza*, 613 F.3d at 435 (citing *Candia*, 454 F.3d at 476). Given *Balleza*, *Candia*, and *Duhon*, the district court's error in relying on the sentence imposed as to Mr. Hardrick to fashion Mr. Robinson's sentence was clear and obvious because the court did not take into account the fact that Mr. Hardrick and Mr. Robinson are not similarly situated.

A defendant is not necessarily similarly situated with a co-defendant simply because they each have been convicted of the same offense. For example, unlike Mr. Robinson, Mr. Hardrick was actually sentenced for his convictions in both the Texas cases (Case Number 4:19-CR-00353-P) and the California cases (Case Number 4:19-CR-00377). Moreover, the court's decision to rely on Mr. Hardrick's sentence to impose a sentence on Mr. Robinson does not take into account differences between their total offense

levels, criminal history categories, and aggravating factors present for one defendant and not the other.

Mr. Robinson's substantial rights were affected because he received an unwarranted upward variance that added at least 79 months to his sentence. He asks this Court to exercise discretion to remedy the error.

<u>CONCLUSION</u>

For these reasons, Mr. Robinson asks that his convictions and his sentence be vacated.

Respectfully Submitted,

/s/ *Delonia A. Watson*

DELONIA A. WATSON
SBIN: 20937500
P.O. Box 24215
Fort Worth, Texas 76124-1215
Telephone: (817) 809-6640
Facsimile: (817) 446-5646
Email: **dawatsonlaw@yahoo.com**

Attorney for Edward Eugene Robinson

# CERTIFICATE OF SERVICE

I, Delonia A. Watson, hereby certify that on this the 30th day of December, 2021, the initial brief was served via ECF email to counsel for the Respondent, Assistant U.S. Attorney Leigha Simonton at Leigha.Simonton@usdoj.gov. I further certify that: (1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. Rule 25.2.1; and (3) the document has been scanned for viruses with the most recent version of Norton Security 8.7.2 and is free of viruses.

/s/ *Delonia A. Watson*

Attorney for Appellant

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, the undersigned certifies this brief complies with the type-volume limitation announced in Rule 32(a)(7)(B), because it contains 7795 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) the Federal Rules of Appellate Procedure because it has been prepared in a proportionally-spaced typeface using Pages, Version 11.1 (7031.0.102), in 14-point Georgia font in the body of the brief and a 12-point font in the footnotes.

Undersigned counsel understands a material misrepresentation in completing this certificate, or circumvention of the length limitations in Rule 32(a)(7), may result in the Court striking the brief and imposing sanctions against the person signing the brief.

/s/ *Delonia A. Watson*
Attorney for Appellant
Dated: December 30, 2021