# 21-10708

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**EDWARD EUGENE ROBINSON,**
Defendant-Appellant

---

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:19-CR-352-P-2

---

**APPELLEE'S BRIEF**

---

Chad E. Meacham
United States Attorney

Stephen S. Gilstrap
Assistant United States Attorney
Texas State Bar No. 24078563
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8644
stephen.gilstrap@usdoj.gov

Attorneys for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. Robinson requests oral argument only as to Issue No. 1, (Brief at iii), which concerns the district court's denial of his motion to dismiss based on a purported Speedy Trial Act violation, but the record confirms that the relevant continuance was granted based on a motion filed by Robinson's counsel. His other arguments are either foreclosed or fail under the demanding plain-error standard that applies. Accordingly, the government does not believe that oral argument will significantly aid the Court in its decisional process.

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT.....................................i

TABLE OF AUTHORITIES ........................................................iv

STATEMENT OF JURISDICTION............................................. 1

STATEMENT OF THE ISSUES ................................................ 1

STATEMENT OF THE CASE.................................................... 2

    1.    Robinson and his coconspirators case and then rob five cellular phone stores in and around Fort Worth—ultimately stealing nearly $200,000 in merchandise................................................. 2

    2.    After the government filed a criminal complaint and the district court granted Robinson's motion to extend the deadline to indict, a grand jury charges Robinson in a five-count indictment. ........... 4

    3.    After the district court denied Robinson's motion to dismiss based on alleged Speedy Trial Act violations, a jury convicts Robinson on all five counts, and the district court varies upward to impose a 540-month sentence under the 18 U.S.C. § 3553(a) factors. .......... 8

SUMMARY OF THE ARGUMENT........................................... 11

ARGUMENT AND AUTHORITIES....................................... 13

    1.    Robinson cannot show any Speedy Trial Act violation because his own counsel sought the relevant continuance in order to have sufficient time to review discovery with Robinson. .................... 13

    2.    Although *Taylor* makes clear that the jury charge should not have said that both Hobbs Act robbery and attempted Hobbs Act robbery were "crimes of violence" for purposes of the 18 U.S.C. § 924(c) counts, Robinson cannot show that any error affected his substantial rights. .................................................................. 18

    3.    As Robinson concedes, his argument that the district court plainly erred at sentencing by considering his co-defendant's sentence (as opposed to national statistics) is foreclosed by precedent............ 24

4.     Robinson cannot show any error—plain or otherwise—in the court's decision to upwardly vary and impose an aggregate 540-month sentence under the Section 3553(a) factors. ....................25

CONCLUSION.............................................................................29

CERTIFICATE OF SERVICE ....................................................29

CERTIFICATE OF COMPLIANCE ...........................................30

# TABLE OF AUTHORITIES

**Federal Cases**                                                                     **Page(s)**

*New York v. Hill*, 528 U.S. 110 (2000) ........................................................... 16

*Puckett v. United States*, 556 U.S. 129 (2009) ................................................ 19

*Taylor v. Illinois*, 484 U.S. 400 (1988) ........................................................... 16

*United States v. Balleza*, 613 F.3d 432 (5th Cir. 2010) ...................................... 26

*United States v. Bowens*, 907 F.3d 347 (5th Cir. 2018)...................................... 19

*United States v. Bryant*, 134 F.3d 364, 1998 WL 39393 (4th Cir. Feb. 2, 1998). 18

*United States v. Cabello*, 33 F.4th 281 (5th Cir. 2022)...................................... 16

*United States v. Candia*, 454 F.3d 468 (5th Cir. 2006) ...................................... 26

*United States v. Cisneros-Gutierrez*, 517 F.3d 751 (5th Cir. 2008) ...................... 26

*United States v. Daychild*, 357 F.3d 1082 (9th Cir. 2004)................................... 15

*United States v. Fields*, 39 F.3d 439 (3d Cir. 1994)....................................... 15, 18

*United States v. Garcia*, 516 F. App'x 336 (5th Cir. 2013) ............................... 26

*United States v. Gates*, 709 F.3d 58 (1st Cir. 2013)......................................... 15

*United States v. Heard*, 2022 WL 2662882 (9th Cir. July 11, 2022).................. 23

*United States v. Herbst*, 666 F.3d 504 (8th Cir. 2012) ...................................... 15

*United States v. Hill*, 35 F.4th 366 (5th Cir. 2022) .......................................... 19

*United States v. Hinojosa*, 463 F. App'x 432 (5th Cir. 2012) ............................ 16

*United States v. Jones*, 935 F.3d 266 (5th Cir. 2019)........................................ 22

*United States v. Keith*, 42 F.3d 234 (4th Cir. 1994) ......................................... 18

**Federal Cases, continued**                                    **Page(s)**

*United States v. Key*, 599 F.3d 469 (5th Cir. 2010)............................................. 28

*United States v. Lynch*, 726 F.3d 346 (2d Cir. 2013) ........................................ 15

*United States v. Malone*, 828 F.3d 331 (5th Cir. 2016).................................... 28

*United States v. Martin*, 520 F.3d 87 (1st Cir. 2008)....................................... 27

*United States v. McClaren*, 14 F.4th 386 (5th Cir. 2021) ................................ 22

*United States v. Mearis*, 36 F.4th 649 (5th Cir. 2022) ..................................... 13

*United States v. Minaya*, 841 F. App'x 301 (2d Cir. 2021)............................... 23

*United States v. Naidoo*, 995 F.3d 367 (5th Cir. 2021) .................................... 24

*United States v. Nesbitt*, 809 F. App'x 705 (11th Cir. 2020) ............................ 23

*United States v. Smith*, 440 F.3d 704 (5th Cir. 2006)....................................... 28

*United States v. Smith*, 957 F.3d 590 (5th Cir. 2020)....................................... 19

*United States v. Sobh*, 571 F.3d 600 (6th Cir. 2009) ........................................ 15

*United States v. Steward*, 793 F. App'x 188 (4th Cir. 2019) ............................ 23

*United States v. Taylor*, 142 S. Ct. 2015 (2022)........................................... 1, 20

*United States v. Vasquez*, 672 F. App'x 56 (2d Cir. 2016) ............................... 23

*United States v. Ventura*, 742 F. App'x 575 (2d Cir. 2018) ........................22, 23

*United States v. Viera*, 2022 WL 1468164 (2d Cir. May 10, 2022) .................. 23

*United States v. Willingham*, 497 F.3d 541 (5th Cir. 2007) ........................24, 25

**Federal Statutes and Rules**                                          **Page(s)**

18 U.S.C. § 3161(b) ................................................................. 13

18 U.S.C. § 3161(h)(7)(A) ................................................... 14, 15

18 U.S.C. § 3231 ...................................................................... 1

18 U.S.C. § 3553(a)(6) ............................................................ 26

18 U.S.C. § 3742(a) .................................................................. 1

28 U.S.C. § 1291 ...................................................................... 1

Fed. R. App. P. 4(b) .................................................................. 1

## STATEMENT OF JURISDICTION

This is a direct appeal from a conviction and sentence in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The district court entered judgment on July 9, 2021, (ROA.516-21), and Robinson timely filed his notice of appeal on July 13, 2021, (ROA.522-23). *See* Fed. R. App. P. 4(b).

## STATEMENT OF THE ISSUES

1. Did the district court err in denying Robinson's motion to dismiss based on a purported Speedy Trial Act violation when Robinson's own counsel sought and received the relevant continuance?

2. Even though the Supreme Court recently held that attempted Hobbs Act robbery is not a "crime of violence" under 18 U.S.C. § 924(c)(3), can Robinson show that any charge error affected his substantial rights under the applicable plain-error standard when the only evidence at trial confirmed that Robinson successfully completed the relevant Hobbs Act robberies? (*Note: This issue was foreclosed when Robinson filed his brief. While it no longer is foreclosed in light of United States v. Taylor, 142 S. Ct. 2015 (2022), this Court should affirm under the applicable plain-error standard.*)

3. Did the district court err, plainly or otherwise, in considering the sentence imposed on one of Robinson's co-defendants (Aaron Hardrick)—as opposed to nationwide sentencing statistics—when it fashioned Robinson's

sentence to avoid an unwarranted sentencing disparity?  (*Note: Robinson concedes that this issue is foreclosed.*)

4.    Did the district court err, plainly or otherwise, in varying upward to impose a sentence on Robinson that it believed was necessary after considering the 18 U.S.C. § 3553(a) factors, including the need to avoid an unwarranted sentencing disparity with Hardrick?

## STATEMENT OF THE CASE

**1.    Robinson and his coconspirators case and then rob five cellular phone stores in and around Fort Worth—ultimately stealing nearly $200,000 in merchandise.**

From May until September 2019, Robinson conspired with others to case and then rob multiple cellular phone stores in the Fort Worth area. (ROA.1352.)  While each of the five robberies was a bit different, they all involved Robinson and his conspirators: (1) entering stores with masks/disguises; (2) carrying or brandishing firearms/stun guns/tasers; and (3) stealing cellular phones and other electronic devices.  (ROA.1352.)  Most of the robberies also involved Robinson and his coconspirators restraining store employees with zip ties.  (ROA.1352.)  Each robbery is summarized below.

*First*, on June 14, 2019, while a coconspirator served as a "lookout," Robinson and Hardrick entered a Sprint store wearing hoodies, baseball caps, masks, and gloves.  (ROA.1352-53.)  Robinson had a taser, and Hardrick had a firearm.  (ROA.1353.)  They zip-tied the employee and took all the cellular

2

phones from a safe in the back of the store—amounting to roughly $23,000 in merchandise.  (ROA.1353.)

*Second*, on June 19, 2019, Robinson and Hardrick robbed another Sprint store in a similar fashion.  (ROA.1353.)  This time, however, they were unable to zip-tie the employee, who fled out the back door of the store.  (ROA.1353.) Hardrick chased her, struck her in the head with the firearm he was carrying, and then returned to the Sprint store, where he and Robinson left with $3,500 in stolen cellular phones.  (ROA.1353.)

*Third*, during a July 7, 2019 robbery of a T-Mobile store, Hardrick pointed his firearm at two employees and ordered them to open the safe at gunpoint.  (ROA.1353.)  Robinson and Hardrick then zip-tied the employees, with Robinson threatening to tase them with "120 volts."  (ROA.1353-54.) Ultimately, Robinson and Hardrick were able to steal $55,500 in cellular phones and other electronics.  (ROA.1354.)

*Fourth*, on July 21, 2019, Robinson, Hardrick, and two other coconspirators entered a second T-Mobile store with handguns drawn while another coconspirator served as a lookout.  (ROA.1354.)  The two store employees were then zip-tied and threatened with being shot if they did not open the safes.  (ROA.1354.)  Robinson and Hardrick robbed this store of more than $60,000 in electronics and cash before exiting.  (ROA.1354.)

*Fifth*, just two days later, Robinson and Hardrick entered a third T-Mobile store with handguns and a taser drawn, surrounded the two employees, and led them to the safe at gunpoint.  (ROA.1354.)  After threatening to tase one of the employees in the face, the men left with nearly $52,000 in stolen electronics.  (ROA.1354.)  All told, these five robberies resulted in Robinson and his conspirators stealing nearly $200,000 in cellular phones, cash, and other electronics.  (ROA.1355.)

## 2.      After the government filed a criminal complaint and the district court granted Robinson's motion to extend the deadline to indict, a grand jury charges Robinson in a five-count indictment.

A couple months after the fifth robbery, the government filed a criminal complaint against Robinson and Hardrick that detailed the investigation before and after the robberies and highlighted other robberies (in Texas and California) the government believed were committed by the same men.  (ROA.24-57.)  Investigators then learned that, on September 23, 2019, Robinson was driving from Texas to California, and they alerted the Ector County Sheriff's Office to the outstanding federal warrant.  (ROA.1354; *see* ROA.67.)  After Robinson committed a traffic violation, deputies stopped him, arrested him, and discovered 92.6 grams of powder cocaine in the vehicle.  (ROA.1354.)  Robinson then was transferred to the Northern District of Texas, and his initial appearance took place on October 15, 2019.  (ROA.6.)

The next day, appointed attorneys for both Robinson and Hardrick filed an unopposed joint motion to extend the government's time to indict the two defendants. (ROA.62-64.) In the motion, Robinson and Hardrick's attorneys represented that the government was prepared to indict the two defendants the next day, but they sought to continue the Speedy Trial Act's 30-day timeline to indict by 45 days (or, until December 9, 2019) in order to review the "voluminous" discovery (some of which had already been provided) with their clients, investigate the case, and engage in plea negotiations. (ROA.63.) The motion also asserted that it "would be in the interest of judicial economy, would serve the ends of justice, and would outweigh the interest of the public in a speedy trial" to extend the government's time to indict. (ROA.64.) The magistrate judge granted that motion the same day. (ROA.7.)

On October 22, 2019, the same day as Robinson's combined preliminary hearing and detention hearing, the Federal Public Defender's Office moved to withdraw from representing Robinson based on a deteriorating attorney-client relationship. (ROA.68.) During that hearing, Robinson said he did not believe that his counsel had his "best interests at heart," but he did not lodge any complaint about the motion to continue the government's time to indict him. (ROA.155.) Rather, it seems that his complaint concerned a disagreement about whether to waive his detention hearing given that charges

had also been filed against him in California.  (ROA.154-55.)  After the magistrate judge expressed skepticism with Robinson's complaints—given that his counsel had been on the case for just a week—he denied the request to withdraw.  (ROA.156-57.)

Less than a week after the hearing, a different Assistant Federal Public Defender started working on Robinson's case.  (ROA.71.)  But that did not appease Robinson.  Within a month, the Federal Public Defender's Office filed another motion to withdraw, citing Robinson's apparent desire to raise claims against that Office.  (ROA.72-74.)

On December 3, 2019—six days before the deadline to indict Robinson—a grand jury returned a three-count indictment, charging Robinson, Hardrick, and another coconspirator with: (1) one count of conspiring to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); (2) one count of interfering with commerce by robbery based on the June 14, 2019 robbery, in violation of 18 U.S.C. §§ 1951(a) & 2; and (3) one count of using, carrying, and brandishing a firearm during a crime of violence (*i.e.*, the June 14, 2019 robbery), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) & (2).  (ROA.75-78.)

Robinson was arraigned.  (ROA.94.)  Before the arraignment, however, the Federal Public Defender's Office filed a third motion to withdraw—again

citing Robinson's desire to bring claims against that Office. (ROA.89-93.) And instead of participating in the arraignment, Robinson refused to be sworn, did not enter a plea, and did not cooperate in the proceedings. (ROA.94.)

Around the time of Robinson's arraignment, Hardrick pled guilty to Counts 2 and 3 of the Indictment. (ROA.98.) Shortly thereafter, Robinson's counsel sought to continue Robinson's trial date. (ROA.98-99.) The district court granted that continuance, citing 18 U.S.C. § 3161(h)(7)(A)'s "ends of justice" exception to the Speedy Trial Act. (ROA.101.) Shortly after the court granted this continuance, the magistrate judge granted the Federal Public Defender's Office third motion to withdraw and appointed new counsel for Robinson. (ROA.107.)

In January 2020, a grand jury charged Robinson in a Superseding Indictment, alleging: (1) one count of conspiring to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One); (2) two counts of interfering (and attempting to interfere) with commerce by robbery based on the June 14, 2019 and June 19, 2019 robberies, in violation of 18 U.S.C. §§ 1951(a) & 2 (Counts Two and Four); (3) two counts of using, carrying, and brandishing a firearm during a crime of violence (*i.e.*, the June 14, 2019 and June 19, 2019 robberies), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) & (2) (Counts Three and Five). (ROA.108-16.) Robinson pled not guilty,

(ROA.120), and obtained additional continuances: (1) requested by his counsel; (2) based on COVID-19; and (3) based on Robinson receiving yet another appointed counsel, (ROA.121-23, 126-29, 133-47, 202-26).

**3.      After the district court denied Robinson's motion to dismiss based on alleged Speedy Trial Act violations, a jury convicts Robinson on all five counts, and the district court varies upward to impose a 540-month sentence under the 18 U.S.C. § 3553(a) factors.**

On November 16, 2020—more than a year after his original counsel had requested Robinson's first (of many) continuances—his new counsel filed a motion to dismiss based on alleged Speedy Trial Act violations. (ROA.287-310.) The government responded and highlighted, among other things, that the continuances that had been granted were sought by Robinson's counsel. (ROA.311-24.) The government also cited uniform authority from appellate courts holding that the Speedy Trial Act allows district courts to grant continuances sought by counsel even if the defendant never consented to the request. (ROA.317-18 (citing cases).) The district court denied that motion on December 2, 2020. (ROA.340-44.)[1]

A three-day jury trial took place on March 8-10, 2021. (ROA.15.) The jury found Robinson guilty on all five counts. (ROA.614-15.) Robinson's PSR

---

[1] Robinson also requested new counsel and filed a "supplemental" pro se motion to dismiss on Speedy Trial Act grounds on the eve of trial, (ROA.438-53, 581), but the district court denied both requests, (ROA.590-606).

set his total offense level at 35 after making various multiple-count adjustments and imposing a variety of enhancements based on Robinson's conduct. (ROA.1356-60.)  With a criminal-history category of IV, Robinson faced a guideline range of 235 to 293 months' imprisonment on the three robbery counts as well as two consecutive 84-month mandatory sentences on the Section 924(c) counts.  (ROA.1378-79.)  And while it did not affect Robinson's guideline calculation, his PSR noted that, in September 2019, he and Hardrick shot and killed Dayvion Persley-Anderson by firing eight shots into Persley-Anderson's chest.  (ROA.1363.)  The PSR stated that this murder likely was done in retaliation related to Hardrick's belief that Persley-Anderson provided information about a previous burglary to law enforcement.  (ROA.1364.)

Robinson filed objections to the PSR asserting that his total offense level should be 32 and his guideline range should be 168 to 210 months' imprisonment plus the two consecutive 84-month sentences.  (ROA.1386-88.) Robinson also objected to the court considering allegedly "uncharged and unproven" conduct, including the murder-related conduct outlined above. (ROA.1387.)  The government responded, (ROA.1390-95), and the probation officer filed a PSR Addendum, supporting the PSR as written (with one exception that did not affect the guideline range), (ROA.1396-1400).  In doing so, the probation officer noted that the statements about Persley-Anderson's

murder were "verified and supplemented by investigating agents."

(ROA.1398.)

After counsel made various arguments about Robinson's objections at the sentencing hearing, the court overruled them, except it made clear that it would not consider "the possible murder charges in any sentencing decision" even though it later recognized that "there's reliable information that [Robinson] may have participated in that." (ROA.654-55, 672.)[2] The court then adopted the PSR's findings of fact and conclusions of law, as well as its 235 to 293-month guideline range plus the mandatory 84-month consecutive sentences on the Section 924(c) counts. (ROA.655-58.) Next, Robinson's counsel argued for a downward variance, and the government presented testimony from victims and asked for an upward variance (similar to what Hardrick received). (ROA.658-65.)

The district court then imposed its sentence: consecutive 124-month sentences on the three robbery counts to be followed by consecutive 84-month sentences on the two Section 924(c) counts—for a total of 540 months. (ROA.666.) The court then specifically stated that the upward variance it imposed was necessary under the 18 U.S.C. § 3553(a) factors because

---

[2] Notably, the district court likewise did not consider the possible murder charges against Hardrick when it sentenced him. (ROA.652-53.)

10

Robinson "is a determined recidivist" who had "continually engaged in criminal conduct for almost four decades" and whose criminal-history category underrepresented "his history of violent crimes." (ROA.671-72.) The court also noted that "this is one of the most heinous crimes, if not the most heinous crime, that [it] had . . . preside[d] over" and remarked that the upward variance was necessary "to avoid unnecessary sentencing disparity with [Hardrick]." (ROA.672-73 ("Indeed, you could argue that I could go even higher, considering that all the evidence demonstrated to me that Mr. Robinson was the leader in this spree.").) Finally, given the upward variance imposed, the court expressly confirmed that any guideline error was harmless:

> [I]f it's later determined on appeal or otherwise that my guideline calculations today were not correct, this would have still been the same sentence I would have imposed otherwise based on my study of the facts and evidence of this case and what was given to me by Congress and the American people in 18 United States Code, Section 3553 and the factors listed therein.

(ROA.674; *see also* ROA.1409.)

## SUMMARY OF THE ARGUMENT

Of the four arguments Robinson raises on appeal, one is contrary to uniform appellate precedent (and common sense), one is foreclosed, and the other two fail under the demanding plain-error standard.

*First*, Robinson argues that his case should have been dismissed on Speedy Trial Act grounds even though his own counsel sought the allegedly

erroneous continuance that extended the government's time to indict. The text of the Speedy Trial Act and every appellate court to consider this issue confirm that defense counsel can seek such continuances without a defendant's approval, and any other outcome would lead to perverse results. Indeed, in this case, the record confirms that the government was ready to indict Robinson within the initial 30-day time period, but it waited given that Robinson's counsel obtained a 45-day extension of that time period. If Robinson is not bound by his counsel's actions, then any defendant could raise a Speedy Trial Act claim following any continuance received by counsel. That is not (and cannot be) the law.

*Second*, while Robinson's claim about attempted Hobbs Act robbery not being a "crime of violence" is no longer foreclosed, he cannot show that any instructional error affected his substantial rights. That is because, while the indictment and jury charge alleged Hobbs Act robbery and attempted Hobbs Act robbery in the conjunctive, there can be no dispute that Robinson was convicted of—and that his Section 924(c) counts were predicated on— completed robberies (not attempts). In fact, there was no dispute at trial that the relevant robberies took place, and the evidence confirmed that Robinson successfully stole nearly $200,000 in cellular phones and other electronics.

*Third*, as Robinson concedes, his claim that the district court erred by considering Hardrick's sentence (as opposed to nationwide robbery statistics) is foreclosed.

*Fourth*, Robinson cannot show any error—much less a plain error—in the district court's consideration of the Section 3553(a) factors or in its decision to impose a relatively slight upward variance. While Robinson suggests that Hardrick was not similarly situated, that claim is belied by the record, and this Court should reject his request to reweigh the Section 3553(a) factors.

## ARGUMENT AND AUTHORITIES

**1. Robinson cannot show any Speedy Trial Act violation because his own counsel sought the relevant continuance in order to have sufficient time to review discovery with Robinson.**

### Standard of Review

Because Robinson preserved his Speedy Trial Act claim, (ROA.287), this Court reviews the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Mearis*, 36 F.4th 649, 653 (5th Cir. 2022).

### Discussion

Once a defendant is arrested on a criminal complaint, the government has a 30-day period within which to obtain an indictment. *See* 18 U.S.C. § 3161(b). That time period, however, can be enlarged in a variety of circumstances, including where a judge grants a continuance "at the request of

the defendant or his counsel" after the judge finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

Here, the timeline underlying Robinson's first claim is undisputed. Robinson was arrested on September 23, 2019, and his counsel sought a 45-day continuance of the government's 30-day deadline to indict Robinson on October 16, 2019—seven days before the 30-day deadline elapsed. (ROA.62-64.) Counsel explained that the continuance was justified because additional time was needed "to review discovery, investigate the case, discuss the case and discovery with [Robinson], and engage in plea negotiations with the government." (ROA.63.) The magistrate judge granted that motion the same day—specifically stating that the "ends of justice" were served by granting the continuance. (ROA.7 (citing 18 U.S.C. § 3161(h)(7)(A)).) The grand jury then returned a three-count indictment on December 3, 2019—six days before an indictment had to be filed following the grant of Robinson's counsel's motion for a continuance. (ROA.75-78.)

Then, nearly a year later, Robinson's fourth appointed counsel filed a motion to dismiss on Speedy Trial Act grounds—asserting, among other things, that Robinson never consented to the initial extension of the government's time to indict (even though his own counsel sought that

extension to review discovery and engage in plea negotiations).[3] (ROA.287-300.) After the government responded, the district court denied that motion given that the plain language of the Speedy Trial Act permits counsel to seek extensions regardless of whether the defendant is consulted or approves the request. (ROA.341 ("The Speedy Trial Act excludes time 'resulting from a continuance granted by any judge on his own motion or at the request of the defendant *or his counsel*[.]'" (quoting 18 U.S.C. § 3161(h)(7)(A))).)

The district court's decision was correct. To the government's knowledge, every appellate court to address this issue has agreed that counsel is not required to obtain a defendant's consent before seeking a Speedy Trial Act continuance. *See, e.g.*, *United States v. Gates*, 709 F.3d 58, 65 (1st Cir. 2013) ("[A] defendant's lawyer may seek a continuance and the concomitant exclusion of time for [Speedy Trial Act] purposes without first securing the defendant's personal consent."); *see also United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012); *United States v. Sobh*, 571 F.3d 600, 603-04 (6th Cir. 2009); *United States v. Daychild*, 357 F.3d 1082, 1094-95 (9th Cir. 2004); *cf. United States v. Fields*, 39 F.3d 439, 443 (3d Cir. 1994) (Alito, J.) ("The defendant's arguments are

---

[3] Robinson also argued that more than 70 unexempted days elapsed between his arrest and trial date, (ROA.288-89), but he has abandoned that argument on appeal, (Brief at 14).

disturbing because he would have us order the dismissal of his indictment based on continuances that his own attorney sought."). And while it does not appear that this Court has addressed this specific issue, it has cited *Daychild* in the Speedy Trial Act context. *United States v. Hinojosa*, 463 F. App'x 432, 439 n.3 (5th Cir. 2012).

Even though Robinson recognizes this uniform authority—as well as binding precedent holding that "express consent by counsel is controlling with respect to scheduling and trial management matters without any requirement that the defendant personally acquiesce," (Brief at 15 (citing *New York v. Hill*, 528 U.S. 110, 115 (2000); *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)); *see also United States v. Cabello*, 33 F.4th 281, 295-96 (5th Cir. 2022)—he claims that his circumstances warrant a different outcome. In particular, Robinson asserts that, because the record shows that he was dissatisfied with his counsel "very early on," his counsel had to get his express consent before seeking a continuance. (Brief at 17.) Beyond the fact that neither the text of the Speedy Trial Act nor the cases cited above suggest that dissatisfaction with counsel is relevant to this inquiry, Robinson is wrong to suggest that his dissatisfaction had anything to do with the Speedy Trial Act or the requested continuance of the indictment deadline sought in October 2019. (Brief at 17.) None of the Federal Public Defender's motions to withdraw mention the initial

continuance as being a point of friction, (ROA.68-69, 72-73, 89-92), and—during the detention hearing where the first motion to withdraw was discussed—Robinson did not mention being upset with his counsel seeking an extension of the government's time to indict, (ROA.155). Instead, Robinson's complaint appeared to stem from being prosecuted in California and concern whether to waive his detention hearing. (ROA.155-56.) While Robinson may maintain that his counsel did not speak with him about a continuance, (Brief at 17), his dissatisfaction with the requested continuance did not arise until more than a year later when subsequent counsel filed a motion to dismiss based on purported Speedy Trial Act violations.

Moreover, accepting Robinson's argument would lead to perverse outcomes. Here, the record confirms that the government was prepared to indict Robinson within the initial 30-day time period, but it waited based on Robinson's counsel contending that it would be in his best interest to review discovery and consider plea negotiations before indictment. (ROA.62-63 (noting that "the government is planning to indict both defendants on October 17, 2019).) Allowing Robinson to obtain dismissal based on a delay that his own counsel created would invite any other defendant whose counsel obtains a Speedy Trial Act continuance to do the same. As then-Judge Alito noted in *Fields*, this type of argument is "disturbing" because it would result in the

dismissal of an indictment "based on [a] continuance[] that [the defendant's] own attorney sought." 39 F.3d at 443; *see United States v. Bryant*, 134 F.3d 364, 1998 WL 39393, at *3-4 (4th Cir. Feb. 2, 1998) (endorsing a rule "to prevent defendants from 'sandbagging the court and the government by agreeing to a continuance and then later urging a dismissal using the time covered by the continuance'") (quoting *United States v. Keith*, 42 F.3d 234, 239 (4th Cir. 1994)).

In sum, Robinson's case does not present any unique circumstances that would justify creating a circuit split by holding that the Speedy Trial Act requires counsel to obtain a defendant's express consent before seeking a continuance despite any such language in the statute. Indeed, any other rule would create perverse incentives and would encourage sandbagging by defendants. Robinson's Speedy Trial Act claim thus fails.

**2.      Although *Taylor* makes clear that the jury charge should not have said that both Hobbs Act robbery and attempted Hobbs Act robbery were "crimes of violence" for purposes of the 18 U.S.C. § 924(c) counts, Robinson cannot show that any error affected his substantial rights.**

<u>**Standard of Review**</u>

Robinson never argued below that the district court introduced a charge error by failing to distinguish between attempted Hobbs Act robbery and completed Hobbs Act robbery in defining the term "crime of violence" for purposes of the Section 924(c) counts. (ROA.1045; *see* Brief at 18, 25-27.) Accordingly, his challenge here is subject to plain-error review. Under that

standard, Robinson must show that: (1) there is an error (2) that is clear or obvious (rather than subject to reasonable dispute) and (3) that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If Robinson meets these requirements, this Court "has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

## Discussion

When this case was indicted and tried, binding Fifth Circuit precedent confirmed that attempted Hobbs Act robbery (just like completed Hobbs Act robbery) was a "crime of violence" for purposes of Section 924(c). *See United States v. Smith*, 957 F.3d 590, 595 (5th Cir. 2020) (holding that, "[w]hen a substantive offense would be a crime of violence under 18 U.S.C. § 924(c)(3)(A), an attempt to commit that offense is also a crime of violence"); *United States v. Bowens*, 907 F.3d 347, 353-54 (5th Cir. 2018) (holding that Hobbs Act robbery is a crime of violence); *see also United States v. Hill*, 35 F.4th 366, 395 (5th Cir. 2022) (citing *Smith* and holding that attempted Hobbs Act robbery is a crime of violence). Given the state of the law, neither the indictment nor the jury instructions distinguished between Hobbs Act robbery and attempted Hobbs Act robbery for purposes of the "crime of violence"

predicates underlying the Section 924(c) counts, and instead, charged both offenses in the conjunctive. (*See* ROA.112-15, 486-88.)

During the pendency of this appeal, however, the Supreme Court decided *United States v. Taylor*, 142 S. Ct. 2015 (2022), which held that attempted Hobbs Act robbery is not a "crime of violence" for purposes of the elements clause in Section 924(c). *Id.* at 2020. In light of *Taylor*, the jury charge should not have suggested that attempted Hobbs Act robbery was a valid "crime of violence" predicate for the Section 924(c) counts.

That said, Robinson cannot show that any error affected his substantial rights because none of the charged crimes actually were *attempted* robberies; they all were completed robberies. The jury did not hear evidence that Robinson tried to rob cellular phones stores and failed or that the robbery crew aborted a planned robbery after a substantial step. Rather, the jury heard uniform evidence that Robinson and his coconspirators successfully robbed multiple cellular phone stores and got away with thousands of dollars in merchandise. (ROA.695 ("Now, I suspect there's not going to be a lot of debate or a lot of question in this trial about the fact that these robberies occurred. This case is about identity[.]"), 705 (defense counsel agreeing that this case is about identity).) Specifically, the store clerks who were robbed walked the jury through the two robberies that were the "crime of violence"

predicates for the Section 924(c) counts in detail. (ROA.711-21, 731-32, 735 (June 14, 2019 robbery where "plenty" of phones were stolen); ROA.746-58 (June 19, 2019 robbery where the robbers were able to "tak[e] phones out of the safe").)

That these two robberies occurred (and were completed successfully) simply was not in dispute during trial. (*See* ROA.1039 ("[W]e had two eyewitness robbery victims. We played the videos of those robberies. Clearly a robbery occurred, clearly during both of those robberies a gun was used and a gun was brandished."), 1054 ("[Y]ou saw the videos where they grabbed the cell phones from the walls—or from the safe and load[ed] them into that gray/orange duffle bag.").) Indeed, during closing argument, the government emphasized that the Section 924(c) counts were based on completed Hobbs Act robberies:

> So, Counts 2 and 3 are the robbery and the gun charge for June 14th. Counts 4 and 5 are the robbery and the gun charge for June 19th. Just two elements for these two counts. The first one is that a crime of violence occurred. The Court already instructed you that *affecting commerce by robbery is a crime of violence*. So, *if you find that those robberies in Counts 2 and 4 occurred* and the defendant committed them you will have satisfied this element.

(ROA.1055 (emphasis added).) No one argued at trial that the evidence justified finding Robinson guilty of *attempted* robbery.

In these circumstances—where the evidence supported convictions for *only* completed robberies—Robinson cannot show any effect on his substantial rights. While he highlights this Court's decision in *United States v. Jones*, 935 F.3d 266, 271-74 (5th Cir. 2019), that case actually supports the government's position because its analysis focuses on issues that do not exist here. *Jones* involved a situation where a valid predicate (a controlled-substance conspiracy) and an invalid predicate (a RICO conspiracy) both were included in the jury charge as "crimes of violence." But, unlike here, the invalid and valid predicates were "not coextensive," and the evidence and arguments at trial suggested that the invalid predicate "encompassed conduct beyond" the valid predicate. *Id.* at 273 (discussing opening argument, closing argument, and evidence at trial).[4] Here, there cannot be a similar concern that the jury would not have convicted Robinson of the Section 924(c) offenses if the jury charge had not used the "attempt" language because there was no evidence of attempted robberies during trial.

In contrast to *Jones*, this case is much more analogous to a few cases from the Second Circuit where that court affirmed convictions on plain-error review. For example, in *United States v. Ventura*, 742 F. App'x 575 (2d Cir.

---

[4] This Court's decision in *United States v. McClaren*, 14 F.4th 386, 412-14 (5th Cir. 2021), is distinguishable for the same reasons as *Jones*.

2018), the court affirmed a defendant's conviction because there was no dispute that he engaged in drug trafficking (the valid predicate) even though the jury charge also included an invalid predicate. *Id.* at 577-58. Similarly, in *United States v. Vasquez*, 672 F. App'x 56 (2d Cir. 2016), the Second Circuit held that a Section 924(c) conviction "undoubtedly rest[ed] on a valid drug-trafficking predicate" where the crime of violence in question and the drug conspiracy were "inextricably intertwined," and the jury convicted on the underlying drug-conspiracy offense. *Id.* at 61. Other similar cases reach the same result. *See, e.g.*, *United States v. Viera*, No. 21-957-CR, 2022 WL 1468164, at *2 (2d Cir. May 10, 2022); *United States v. Minaya*, 841 F. App'x 301, 305-06 (2d Cir. 2021); *United States v. Nesbitt*, 809 F. App'x 705, 710 (11th Cir. 2020); *United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019); *cf. United States v. Heard*, Nos. 18-10218, et al., 2022 WL 2662882, at *7 (9th Cir. July 11, 2022) ("[E]ven if Gordon's conviction of Count 9 does not validly support his § 924(c) conviction, that conviction is still lawful because the other predicate offense, assault with a dangerous weapon, qualifies as a crime of violence.").

In sum, even though the jury charge allowed the jury to find Robinson guilty of the Section 924(c) charges based on his commission of either Hobbs Act robbery or attempted Hobbs Act robbery, he cannot show any effect on his

substantial rights because the evidence only allowed the jury to find him guilty of completed Hobbs Act robberies—not attempts.  This Court should affirm.

**3.    As Robinson concedes, his argument that the district court plainly erred at sentencing by considering his co-defendant's sentence (as opposed to national statistics) is foreclosed by precedent.**

<u>Standard of Review</u>

As Robinson concedes, (Brief at 28-29), he did not argue below that the district court could not consider Hardrick's sentence (as opposed to national statistics) in varying upward to avoid an unwarranted sentencing disparity.  Accordingly, this claim is subject to plain-error review.  (*See supra* Part 2 (summarizing plain-error standard).)

<u>Discussion</u>

Robinson rightly concedes that this argument is foreclosed in the government's favor by *United States v. Willingham*, 497 F.3d 541, 544 (5th Cir. 2007), and *United States v. Naidoo*, 995 F.3d 367, 383 (5th Cir. 2021), among other binding decisions.  In *Naidoo*, for example, this Court confirmed that "'[n]ational averages of sentences'" with "'no details underlying the sentences are unreliable to determine unwarranted disparity.'"  995 F.3d at 383 (quoting *Willingham*, 497 F.3d at 544).  In fact, this Court went on to note that "where averages 'only reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants,' they are 'basically meaningless in

24

considering whether a disparity with respect to a particular defendant is warranted or unwarranted.'" *Id.* (quoting *Willingham*, 497 F.3d at 544-45). Accordingly, Robinson's argument is "irrelevant" and foreclosed. *Id.*

**4.    Robinson cannot show any error—plain or otherwise—in the court's decision to upwardly vary and impose an aggregate 540-month sentence under the Section 3553(a) factors.**

<u>Standard of Review</u>

Like Robinson's foreclosed sentencing claim, his argument that the court erred in varying upward by 79 months and imposing an aggregate 540-month sentence under the Section 3553(a) factors—including, to avoid an unwarranted sentencing disparity with Hardrick—is similarly subject to plain-error review.  (Brief at 2, 29-30.)

<u>Discussion</u>

Robinson agrees that the district court considered several Section 3553(a) factors when explaining why it believed an upward variance was necessary—namely, that: (1) Robinson was a "'determined recidivist,' with a continuous record of criminal conduct, which included disciplinary issues while incarcerated"; (2) "Robinson had engaged in a 'spree of robberies' that were not considered in the guideline calculation"; (3) "Robinson's criminal history category underrepresented his prior criminal behavior"; and (4) his "offense was heinous."  (Brief at 30 (quoting ROA.671-73).)  It also stated that it had

considered the 540-month sentence Hardrick previously received in order to avoid an unwarranted disparity, (ROA.673), and Robinson now argues that this last consideration was erroneous. (Brief at 29-34.)

As an initial matter (and similar to his foreclosed sentencing argument), Robinson appears to suggest that the court erred by considering Hardrick's sentence because it was not a nationwide statistic. (Brief at 31-32.) But this Court has never said that a district court cannot consider a co-defendant's punishment in fashioning an appropriate sentence; it simply has said that a court must, under 18 U.S.C. § 3553(a)(6), consider the need to avoid unwarranted disparities between similarly situated defendants nationwide.[5] *United States v. Balleza*, 613 F.3d 432, 435 (5th Cir. 2010); *see also United States v. Candia*, 454 F.3d 468, 476 (5th Cir. 2006). Indeed, this Court and others routinely consider sentencing arguments based on the punishment that a co-defendant received and have said that this can be an appropriate consideration. *See, e.g.*, *United States v. Garcia*, 516 F. App'x 336, 337 (5th Cir. 2013) (considering but rejecting a defendant's argument that he should have received a downward variance based on a co-defendant's sentence); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 767 (5th Cir. 2008) (holding that a district

---

[5] Robinson's generic citation to the "mean term of imprisonment" for robbery offenses is irrelevant as this Court has held in *Willingham* and *Naidoo*. (*See* Brief at 33.)

court did not abuse its discretion in considering a sentencing-disparity argument even though the appellant's co-defendant was "more deeply involved in the conspiracy" and "received a sentence ten years less than his" because the co-defendant "pled guilty, provided information to law enforcement authorities, and did not flee before trial"); *see also United States v. Martin*, 520 F.3d 87, 94 (1st Cir. 2008) ("[D]istrict courts have discretion, in appropriate cases, to align co-defendants' sentences somewhat in order to reflect comparable degrees of culpability[.]").

Further, Robinson's suggestion that he was not similarly situated to Hardrick is meritless. As explained above, both men participated in the same conduct that supported the charges against them. If anything, Robinson presented greater culpability compared to Hardrick because: (1) "the evidence demonstrated . . . that [Robinson] was the leader in this spree," (ROA.673); and (2) Hardrick (unlike Robinson) pled guilty, (*see United States v. Hardrick*, No. 4:19-CR-352-P, Dkt. No. 158 at 8-9 (N.D. Tex., filed Nov. 6, 2020)). And even though Hardrick's sentence involved both his Texas and California cases, because he pled guilty in both, he ultimately received punishment on three Hobbs Act robbery counts and two Section 924(c) counts—just like Robinson. (*See United States v. Hardrick*, No. 4:19-CR-352-P, Dkt. No. 156 at 13 (N.D. Tex., filed Oct. 29, 2020).) The same district judge who sentenced both

Hardrick and Robinson thus reasonably concluded that the two men's conduct was similarly heinous and warranted commensurate punishment—despite the purported differences Robinson tries to raise now.

At the end of the day, Robinson's sentencing argument boils down to a disagreement with how the district court balanced the various sentencing factors, and he cannot show a "clear error of judgment." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006); *see United States v. Malone*, 828 F.3d 331, 342 (5th Cir. 2016) (noting that a mere disagreement with how the district court balanced the Section 3553(a) factors "is not a sufficient ground for reversal"). In imposing this upward variance, the district court highlighted the Section 3553(a) factors that supported its decision and reasonably considered how Robinson's sentence compared to his co-defendant's. The court even noted that "you could argue that I could go even higher," (ROA.673), but it made clear that the 540-month sentence was the sentence it would impose regardless of any guideline error, (ROA.674; *see also* ROA.1409). And to the extent Robinson attempts to assert that this upward variance was substantively unreasonable, this Court has affirmed significantly more severe upward variances. *See, e.g.*, *United States v. Key*, 599 F.3d 469, 475-76 (5th Cir. 2010) (upholding an upward variance from a guideline maximum of 57 months to 216 months); *Smith*, 440 F.3d at 708-10 (affirming an upward variance from a

guideline maximum of 27 months to 60 months). Robinson thus cannot show any error, much less a plain error.

## CONCLUSION

This Court should affirm the judgment.

Respectfully submitted,

Chad E. Meacham
United States Attorney

*/s/ Stephen S. Gilstrap*
Stephen S. Gilstrap
Assistant United States Attorney
Texas State Bar No. 24078563
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8644
stephen.gilstrap@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF SERVICE

I certify that this document was served on Robinson's attorney, Delonia A. Watson, through the Court's ECF system on August 12, 2022, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Stephen S. Gilstrap*
Stephen S. Gilstrap
Assistant United States Attorney

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,318 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*/s/ Stephen S. Gilstrap*
Stephen S. Gilstrap
Assistant United States Attorney
Date: August 12, 2022
